## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FREEDOM WATCH, Inc.**
**2020 Pennsylvania Ave. NW, Suite 345**
**Washington, DC 20006**

**Plaintiff,**

**v.**

**U.S. DEPARTMENT OF STATE**
**2201 C Street NW**
**Washington, D.C. 20520**

**Defendant.**

## COMPLAINT

Plaintiff Freedom Watch, Inc. brings this action against the Department of State, to compel

compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et. seq.*.  As grounds

therefor, Plaintiff alleges as follows.

## JURISDICTION AND VENUE

1.  The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28

    U.S.C.  §1331.  Venue is proper in this district pursuant to 28 U.S.C. §1391(e).

## PARTIES

2.  Plaintiff Freedom Watch is a public interest foundation organized under the laws of the

    District of Columbia and does business, in part, at 2020 Pennsylvania Ave., NW Suite

    345, Washington, DC, 20006.  Plaintiff seeks to promote openness within the federal

    government and their actions.

3.  The Defendant, the U.S. Department of State, is an agency of the United States

    Government, with headquarters within the District of Columbia.

**4.** Defendant has possession, custody, and control of records to which Plaintiff seeks access.

## STATEMENT OF FACTS

**5.** On or about March 27, 2015, Plaintiff sent a FOIA request, via facsimile and the mail, to

defendant seeking records about leaked information as set forth below and attached as

Exhibit 1.  Specifically, Plaintiff requested pursuant to the FOIA:

"...all correspondence, memoranda, documents, reports, records, statements, audits, lists of names, applications, diskettes, letters, expense logs and receipts, calendar or diary logs, facsimile logs, telephone records call sheets, tape recordings, video/movie recordings, notes, examinations, opinions, folders, files, books, manuals, pamphlets, forms, drawings, charts, photographs, electronic mail, and other documents and things (hereinafter, "information") that refer or relate to the following in any way, within twenty (20) business days as set forth below:

(1)   Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to terrorist attacks on the U.S. Consulate in Benghazi, Libya, on or about September 11, 2012.

(2)   Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to proposed or recommended explanations to the public of terrorist attacks on the U.S. Consulate in Benghazi, Libya, on or about September 11, 2012.

(3)   Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to proposed or recommended talking points to be used by U.S. Government officials for discussing with journalists terrorist attacks on the U.S. Consulate in Benghazi, Libya, on or about September 11, 2012.

(4)   Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any decision for Susan Ambassador Rice to appear on news media television shows in September and/or October 2012 concerning terrorist attacks on the U.S. Consulate in Benghazi, Libya, on or about September 11, 2012.

(5) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any decision by Hillary Clinton not to appear on news media television shows in September and/or October 2012 concerning terrorist attacks on the U.S. Consulate in Benghazi, Libya, on or about September 11, 2012.

(6) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any discussion or analysis of terrorist or violent attacks against the U.S. Consulate in Benghazi, Libya, during 2012 but prior to September 11, 2012.

(7) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the location of President Barack Obama during the night of September 11, 2012.

(8) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the involvement of President Barack Obama during the night of September 11, 2012 in the U.S. Government response to terrorist attacks on the U.S. Consulate in Benghazi, Libya on or about September 11, 2012.

(9) Any and all communications, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, between then Secretary of State Hillary Clinton and then Secretary of Defense Leon Panetta concerning, regarding, or relating to terrorist attacks on the U.S. Consulate in Benghazi, Libya, on or about September 11, 2012.

(10) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the location of Hillary Clinton during the night of September 11, 2012.

(11) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the involvement of Hillary Clinton during the night of September 11, 2012 in the U.S. Government response to terrorist attacks on the U.S. Consulate in Benghazi, Libya on or about September 11, 2012.

(12) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any and all orders issued by then Secretary of

State Hillary Clinton in response to terrorist attacks on the U.S. Consulate in Benghazi, Libya on or about September 11, 2012.

(13) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any recommendations, proposals, plans of action, or requests for action sent to then Secretary of State Hillary Clinton concerning any response by the U.S. Government to terrorist attacks on the U.S. Consulate in Benghazi, Libya on or about September 11, 2012.

(14) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any communication between then Secretary of State Hillary Clinton and any official of the government of Libya relating to terrorist attacks on the U.S. Consulate in Benghazi, Libya on or about September 11, 2012.

(15) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any communication between then Secretary of State Hillary Clinton and any official of the government of Italy relating to the use of NATO assets in Italy in response to terrorist attacks on the U.S. Consulate in Benghazi, Libya on or about September 11, 2012.

(16) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any communication between then Secretary of State Hillary Clinton and any official of the government of Italy relating to the use of NATO assets in Italy in response to terrorist attacks on the U.S. Consulate in Benghazi, Libya on or about September 11, 2012.

(17) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the distance of any U.S. aircraft carrier battle group located in the Mediterranean Sea or Persian Gulf to Benghazi, Libya on the night of September 11, 2012, (local Benghazi) time.  For the purposes of this request, you may redact the exact location of U.S. Navy ships, but include their distance from Benghazi, Libya in miles, nautical miles, or flight time for aircraft.

(18) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any discussion or analysis of the closing of the Embassy of the United Kingdom in Libya during 2012.

(19) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton,

4

concerning, regarding, or relating to any decision, proposal, or discussion concerning whether the U.S. Department of State should close the U.S. Consulate in Benghazi, Libya after the closing of the Embassy of the United Kingdom in Libya during 2012.

(20) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any discussion or analysis of increasing security for U.S. Government personnel in Libya after the closing of the Embassy of the United Kingdom in Libya during 2012.

(21) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, relating, to or regarding any plans or proposals for then Secretary of State Hillary Clinton to visit Benghazi, Libya, the scheduling of such visit contemplated or planned between September 1, 2012, and November 6, 2012.

(22) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, relating, to or regarding any plans or proposals to present or publicize U.S. Department of State activities in Benghazi, Libya, between September 1, 2012, and November 6, 2012, as a foreign policy success or achievement of the Obama administration.

(23) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, any plans or proposals to present or publicize U.S. Department of State activities in Benghazi, Libya, between September 1, 2012, and November 6, 2012, as a foreign policy success or achievement of the Obama administration.  For the purposes of this request, the word "Consulate" is intended to include the facility located in Benghazi, Libya, operated under the authority of the U.S. Department of State, regardless of the formal terminology used to identify that facility.

(24) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the feasibility of sending AFRICOM *Commander in Extremis* (CIF) forces, teams, or personnel to respond to terrorist attacks on the U.S. Consulate in Benghazi, Libya, on or about September 11, 2012.

(25) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the estimated time it would take for AFRICOM *Commander in Extremis*(CIF) forces, teams, or personnel to reach Benghazi, Libya, in response to terrorist attacks on the U.S. Consulate in Benghazi, Libya, on or about September 11, 2012.

(26) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the presence or stationing of AFRICOM *Commander in Extremis* (CIF) forces, teams, or personnel in Sigonella Air Base in Italy on or about September 11, 2012.

(27) Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the availability of AFRICOM *Commander in Extremis* (CIF) forces, teams, or personnel on standby to respond to possible crises in Africa, the Middle East, or the Mediterranean Sea region on or about September 11, 2012.

(28) A copy of any form "OF 109" signed by Secretary of State Hillary Clinton as an employee of the U.S. Department of State upon her resignation from the Department, which for informational guidance was probably signed in or around January, February, or March 2013.

(29) One copy of each of the approximately 30,490 emails which Hillary Clinton maintained on a private computer file server / email system during her tenure as Secretary of State that she turned over to the U.S. Department of State in or about February or March 2013.

(30) Any and all documents created after January 20, 2009, that identify or discuss officials, officers, or employees of the State Department using email addresses or accounts other than a "state.gov" email addresses assigned to them for the conduct of official U.S. Department of State business.

(31) Any and all documents created after January 20, 2009, discussing incidents or problems of non-compliance by employees or officials of the U.S. Department of State with Departmental procedures, regulations, or requirements as to which email addresses or accounts they should use for the conduct of official U.S. Department of State business.

(32) Any and all communications with any person in the White House or Executive Office of the President created after January 20, 2009, but before February 1, 2013, discussing the use of email by former Secretary of State Hillary Clinton, including Clinton's use of any particular email address or account.  (This request does not call for each and every actual email to or from Clinton, but communications discussing Clinton's practices of using any email address or account as a procedure, practice, or method of communication.)

(33) Any and all emails – produced in redacted form to withhold classified material – sent to or sent from Secretary of State created after January 20, 2009, but before February 1, 2013, relating to or containing any classified information.

(34) Any and all documents relating to any request, proposal, or suggestion for any action, change of position, waiver, policy, or statement from the U.S. Department of State from any person, organization, country, or business identified in such document as a donor to the Clinton Foundation, concerning documents created after January 20, 2009, but before February 1, 2013.

(35) Any and all documents relating to any request, proposal, or suggestion for any action, change of position, waiver, policy, or statement from the U.S. Department of State from any person, organization, country, or business identified in such document as paying any speaking fee to Bill Clinton, concerning documents created after January 20, 2009, but before February 1, 2013.

(36) Any and all documents describing the policies and/or procedures in place to ensure that emails for the conduct of official U.S. Department of State business from private email addresses other than "state.gov" email addresses were searched for responsiveness to FOIA requests.

(37) Any and all documents created after September 10, 2012, concerning the means or methods by which any official or officer of the U.S. Department of State communicated with then Secretary of State Hillary Clinton concerning terrorist attacks at the U.S. Consulate in Benghazi, Libya on or about September 11-12, 2012.

(38) Any and all email messages to or from Secretary Hillary Clinton or Cheryl Mills at any non-governmental email address or account relating to the editing or modification of talking points describing the September 11, 2012, terrorist attacks at the U.S. Consulate in Benghazi, Libya.

(39) Any and all email communications in the custody of the U.S. Department of State created after January 20, 2009, but before February 1, 2013, between Hillary Clinton, Cheryl Mills, and/or Huma Abedin (whether using a governmental email address or account or a non-governmental email address or account) and any non-governmental email address or account used by Lois Lerner, an official at the Internal Revenue Service.

(40) Any and all documents in the custody of the U.S. Department of State, created since January 20, 2009, relating in any way to donations to The Clinton Foundation including its projects or spin-off initiatives such as The Clinton Global Initiative.

(41) Any and all documents relating in any way to then Secretary of Hillary Clinton's scheduling plans to attend any event of, hosted by or organized by the Clinton Foundation.

(42) Any and all documents written by or addressed to Cheryl Mills relating in any way to any fees paid to, or contemplated to be paid, to Bill Clinton, the husband of Secretary of State Hillary Clinton, as a payment, honorarium or fee for any speech, appearance or participation in any event by Bill Clinton, concerning documents created after January 20, 2009, but before February 1, 2013.

(43) Any and all documents relating to any waiver of conflict of interest rules by the U.S. State Department concerning any activity by Bill Clinton, concerning documents created after January 20, 2009, but before February 1, 2013.

(44) Any and all documents created after January 20, 2009, but before February 1, 2013, relating in any way to requests or suggestions for then U.S. Secretary of State Hillary Clinton to oppose the foreign policy or interests of Israel.

(45) Any and all documents created after January 20, 2009, but before February 1, 2013, relating in any way to requests or suggestions for then U.S. Secretary of State Hillary Clinton to seek to relax, reduce, or minimize sanctions on Iran.

(46) Any and all documents created after January 20, 2009, but before February 1, 2013, relating in any way to requests or suggestions for then U.S. Secretary of State Hillary Clinton to seek to relax, reduce, or minimize opposition to Iran's nuclear weapons development programs.

(47) Any and all documents created since January 20, 2009, relating in any way to any opposition of the U.S. Government to any contemplated action by Israel against Iran's nuclear weapons development program(s).

(48) Any and all documents created since January 20, 2009, relating in any way to donations or suggested donations or contemplated donations to any organization opposing any politician or political party seeking election to office or re-election in Israeli government.

(49) Any and all document created since January 20, 2009, relating in any way to donations or suggested donations or contemplated donations to any politician or political party seeking election to office or re-election in Israeli government.

(50) Any and all documents relating in any way to the re-election campaign of Israeli Prime Minister Benjamin Netanyahu or Netanyahu's political party Likud during 2015.

6.  Pursuant to 5 U.S.C. § 552 (a)(6)(A) Defendant was required and failed to respond timely to Plaintiff's FOIA request.

7.  Plaintiff's review and analysis of information made publicly available by the Defendant and the U.S. Government indicate that such documents must exist given the role of the Secretary of State and the U.S. Department of State generally in these events and the nature of the events and topics addressed, and because the lack of any such documents would in itself be possible only upon a failure of the American' people's representatives in government to address those foreign policy developments.  Therefore, the evidence publicly available indicates that documents of the type requested do exist within the custody and control of the Defendant U.S. Department of State.

8.  The records Plaintiff seeks are of urgent importance and are in the extreme public interest.  The American people need to be informed expeditiously through disseminations by Freedom Watch of the requested records, as it affects their immediate well being, economically and otherwise.

9.  Plaintiff requested a fee waiver in accordance with the procedures set forth under the regulations of the agency.

10. As of the date of this Complaint, Defendant has failed to produce any records responsive to the request or demonstrative that the responsive records are exempt from production.

**11.** As of the date of this Complaint, Defendant has not indicated whether or when any responsive records will be produced

**12.** As of the date of this Complaint, Defendant has not indicated whether a fee waiver will be granted.

**13.** In sum, the Defendant has failed to respond to the requests in any substantive manner.

**14.** Because Defendant failed to comply with the time limits set forth in 5 U.S.C. §552(a)(6)(C), Plaintiff is deemed to have exhausted any and all administrative remedies with respect of its FOIA request, pursuant to 5 U.S.C. § 552(a)(6)(C).

## <u>COUNT</u>
### (Violation of FOIA, 5 U.S.C § 552, et. seq.)

**15.** Plaintiff realleges paragraphs1 through 14 as if fully stated herein.

**16.** Defendant is unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. § 552, et. seq.

**17.** Plaintiff is being irreparably harmed by reason of Defendant's unlawful withholding of requested records, and Plaintiff will continue to be irreparably harmed unless Defendant is compelled to conform to the requirements of this law.

WHEREFORE, Plaintiff respectfully requests that the Court: (1) Order Defendant to conduct expedited searches for any and all responsive records to Plaintiff's FOIA request and demonstrate that they employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA request; (2) order Defendant to expeditiously produce, by a date certain, any and all non-exempt records responsive to Plaintiff's FOIA request and a

Vaughn index of any responsive records withheld under claim of exemption; (3) enjoin

Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiff's

FOIA request; (4) grant Plaintiff an award of attorney's fees and other litigation costs reasonably

incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and (5) grant Plaintiff any other relief

as the Court deems just or proper.

Dated: August 6, 2015

                                   Respectfully Submitted,


                                   */s/ Larry Klayman*
                                   Larry Klayman, Esq.
                                   D.C. Bar No. 334581
                                   Chairman & General Counsel
                                   Freedom Watch
                                   2020 Pennsylvania Ave. NW, Suite 345
                                   Washington, DC 20006
                                   Tel: (310) 595-0800
                                   Email: leklayman@gmail.com

Exhibit 1



# FREEDOM WATCH

▶ www.FreedomWatchUSA.org

▶ **World Headquarters** 2020 Pennsylvania Avenue, N.W., Suite 345, Washington, DC 20006-1811  ▶ (310) 595-0800  ▶ leklayman@gmail.com

Via Mail and Fax

March 26, 2015

Information and Privacy Coordinator
ATTN: Freedom of Information Act (FOIA) Contact
U.S. Department of State, SA-2
515 Twenty-Second Street, N.W.
Washington, DC 20522-6001
        Facsimile: (202) 261-8579

Re:    Freedom of Information Act Request

Dear Sir/Madam:

Freedom Watch, Inc. hereby submits this request for information in terms of the documents
described herein pursuant to the Freedom of Information Act ("FOIA") (5 U.S.C. § 552) and
U.S. Department of State regulations 22 C.F.R. §§171.1, 171.5.

The definitions for relevant, key terms are established by Department of State regulations 22
C.F.R. §§ 171.11 through 171.13.   In this request, a "document" also includes a "record" as
defined in the regulations.

22 C.F.R. §171.1  provides that "Records of the Department of State shall be made available to
the public upon request made in compliance with the access procedures established in this part,
except for any records exempt by law from disclosure. Any request for records must describe the
information sought in such a way (see §171.5(c)) that an employee of the Department of State
who is familiar with the subject area of the request can locate the records with a reasonable
amount of effort."

Accordingly, the Department of State's response cannot be performed by a keyword computer
search.  22 C.F.R. §171.1 requires "that an employee of the Department of State who is familiar
with the subject area of the request ... locate the records with a reasonable amount of effort."
The Department's response must include a search by one or more employees "familiar with the
subject area of the request" with regard to each request and topic area. 22 C.F.R. §171.1 requires
a search on each topic and request by a knowledgeable human being who is a subject-matter
expert and prohibits a search of keywords by an information specialist unfamiliar with "the
subject area of the request."

For the purposes of the following FOIA requests, the word "Consulate" is intended to include the
facility located in Benghazi, Libya, and operated under the authority of the U.S. Department of

State, in or around September 2012, regardless of the formal terminology used to identify that facility.

Freedom Watch, Inc. hereby requests that that the Department of State produce all documents including correspondence, memoranda, documents, reports, records, statements, audits, lists of names, applications, diskettes, letters, expense logs and receipts, calendar or diary logs, facsimile logs, telephone records call sheets, tape recordings, video/movie recordings, notes, examinations, opinions, folders, files, books, manuals, pamphlets, forms, drawings, charts, photographs, electronic mail, and other documents and things that refer or relate to the following in any way, within twenty (20) business days of receipt of this request as set forth below:

1. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to terrorist attacks on the U.S. Consulate in Benghazi, Libya, on or about September 11, 2012.

2. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to proposed or recommended explanations to the public of terrorist attacks on the U.S. Consulate in Benghazi, Libya, on or about September 11, 2012.

3. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to proposed or recommended talking points to be used by U.S. Government officials for discussing with journalists terrorist attacks on the U.S. Consulate in Benghazi, Libya, on or about September 11, 2012.

4. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any decision for Susan Ambassador Rice to appear on news media television shows in September and/or October 2012 concerning terrorist attacks on the U.S. Consulate in Benghazi, Libya, on or about September 11, 2012.

5. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any decision by Hillary Clinton not to appear on news media television shows in September and/or October 2012 concerning terrorist attacks on the U.S. Consulate in Benghazi, Libya, on or about September 11, 2012.

6. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any discussion or analysis of terrorist or violent attacks against the U.S. Consulate in Benghazi, Libya, during 2012 but prior to September 11, 2012.

7. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the location of President Barack Obama during the night of September 11, 2012.

8.  Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the involvement of President Barack Obama during the night of September 11, 2012 in the U.S. Government response to terrorist attacks on the U.S. Consulate in Benghazi, Libya on or about September 11, 2012.

9.  Any and all communications, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, between then Secretary of State Hillary Clinton and then Secretary of Defense Leon Panetta concerning, regarding, or relating to terrorist attacks on the U.S. Consulate in Benghazi, Libya, on or about September 11, 2012.

10.  Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the location of Hillary Clinton during the night of September 11, 2012.

11.  Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the involvement of Hillary Clinton during the night of September 11, 2012 in the U.S. Government response to terrorist attacks on the U.S. Consulate in Benghazi, Libya on or about September 11, 2012.

12.  Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any and all orders issued by then Secretary of State Hillary Clinton in response to terrorist attacks on the U.S. Consulate in Benghazi, Libya on or about September 11, 2012.

13.  Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any recommendations, proposals, plans of action, or requests for action sent to then Secretary of State Hillary Clinton concerning any response by the U.S. Government to terrorist attacks on the U.S. Consulate in Benghazi, Libya on or about September 11, 2012.

14.  Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any communication between then Secretary of State Hillary Clinton and any official of the government of Libya relating to terrorist attacks on the U.S. Consulate in Benghazi, Libya on or about September 11, 2012.

15.  Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any communication between then Secretary of State Hillary Clinton and any official of the government of Italy relating to the use of NATO assets in Italy in

response to terrorist attacks on the U.S. Consulate in Benghazi, Libya on or about September 11, 2012.

16. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any communication between then Secretary of State Hillary Clinton and any official of the government of Italy relating to the use of NATO assets in Italy in response to terrorist attacks on the U.S. Consulate in Benghazi, Libya on or about September 11, 2012.

17. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the distance of any U.S. aircraft carrier battle group located in the Mediterranean Sea or Persian Gulf to Benghazi, Libya on the night of September 11, 2012, (local Benghazi) time.  For the purposes of this request, you may redact the exact location of U.S. Navy ships, but include their distance from Benghazi, Libya in miles, nautical miles, or flight time for aircraft.

18. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any discussion or analysis of the closing of the Embassy of the United Kingdom in Libya during 2012.

19. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any decision, proposal, or discussion concerning whether the U.S. Department of State should close the U.S. Consulate in Benghazi, Libya after the closing of the Embassy of the United Kingdom in Libya during 2012.

20. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to any discussion or analysis of increasing security for U.S. Government personnel in Libya after the closing of the Embassy of the United Kingdom in Libya during 2012.

21. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, relating, to or regarding any plans or proposals for then Secretary of State Hillary Clinton to visit Benghazi, Libya, the scheduling of such visit contemplated or planned between September 1, 2012, and November 6, 2012.

22. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, relating, to or regarding any plans or proposals to present or publicize U.S. Department of State activities in Benghazi, Libya, between September 1, 2012, and November 6, 2012, as a foreign policy success or achievement of the Obama administration.

State Department:  FOIA Request

23. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, any plans or proposals to present or publicize U.S. Department of State activities in Benghazi, Libya, between September 1, 2012, and November 6, 2012, as a foreign policy success or achievement of the Obama administration.  For the purposes of this request, the word "Consulate" is intended to include the facility located in Benghazi, Libya, operated under the authority of the U.S. Department of State, regardless of the formal terminology used to identify that facility.

24. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the feasibility of sending AFRICOM *Commander in Extremis* (CIF) forces, teams, or personnel to respond to terrorist attacks on the U.S. Consulate in Benghazi, Libya, on or about September 11, 2012.

25. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the estimated time it would take for AFRICOM *Commander in Extremis*(CIF) forces, teams, or personnel to reach Benghazi, Libya, in response to terrorist attacks on the U.S. Consulate in Benghazi, Libya, on or about September 11, 2012.

26. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the presence or stationing of AFRICOM *Commander in Extremis* (CIF) forces, teams, or personnel in Sigonella Air Base in Italy on or about September 11, 2012.

27. Any and all documents, including emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton, concerning, regarding, or relating to the availability of AFRICOM *Commander in Extremis* (CIF) forces, teams, or personnel on standby to respond to possible crises in Africa, the Middle East, or the Mediterranean Sea region on or about September 11, 2012.

28. A copy of any form "OF 109" signed by Secretary of State Hillary Clinton as an employee of the U.S. Department of State upon her resignation from the Department, which for informational guidance was probably signed in or around January, February, or March 2013.

29. One copy of each of the approximately 30,490 emails which Hillary Clinton maintained on a private computer file server / email system during her tenure as Secretary of State that she turned over to the U.S. Department of State in or about February or March 2013.

30. Any and all documents created after January 20, 2009, that identify or discuss officials, officers, or employees of the State Department using email addresses or accounts other than a "state.gov" email addresses assigned to them for the conduct of official U.S. Department of State business.

31. Any and all documents created after January 20, 2009, discussing incidents or problems of non-compliance by employees or officials of the U.S. Department of State with Departmental procedures, regulations, or requirements as to which email addresses or accounts they should use for the conduct of official U.S. Department of State business.

32. Any and all communications with any person in the White House or Executive Office of the President created after January 20, 2009, but before February 1, 2013, discussing the use of email by former Secretary of State Hillary Clinton, including Clinton's use of any particular email address or account. (This request does not call for each and every actual email to or from Clinton, but communications discussing Clinton's practices of using any email address or account as a procedure, practice, or method of communication.)

33. Any and all emails – produced in redacted form to withhold classified material – sent to or sent from Secretary of State created after January 20, 2009, but before February 1, 2013, relating to or containing any classified information.

34. Any and all documents relating to any request, proposal, or suggestion for any action, change of position, waiver, policy, or statement from the U.S. Department of State from any person, organization, country, or business identified in such document as a donor to the Clinton Foundation, concerning documents created after January 20, 2009, but before February 1, 2013.

35. Any and all documents relating to any request, proposal, or suggestion for any action, change of position, waiver, policy, or statement from the U.S. Department of State from any person, organization, country, or business identified in such document as paying any speaking fee to Bill Clinton, concerning documents created after January 20, 2009, but before February 1, 2013.

36. Any and all documents describing the policies and/or procedures in place to ensure that emails for the conduct of official U.S. Department of State business from private email addresses other than "state.gov" email addresses were searched for responsiveness to FOIA requests.

37. Any and all documents created after September 10, 2012, concerning the means or methods by which any official or officer of the U.S. Department of State communicated with then Secretary of State Hillary Clinton concerning terrorist attacks at the U.S. Consulate in Benghazi, Libya on or about September 11-12, 2012.

38. Any and all email messages to or from Secretary Hillary Clinton or Cheryl Mills at any non-governmental email address or account relating to the editing or modification of talking points describing the September 11, 2012, terrorist attacks at the U.S. Consulate in Benghazi, Libya.

39. Any and all email communications in the custody of the U.S. Department of State created after January 20, 2009, but before February 1, 2013, between Hillary Clinton, Cheryl Mills, and/or Huma Abedin (whether using a governmental email address or

account or a non-governmental email address or account) and any non-governmental email address or account used by Lois Lerner, an official at the Internal Revenue Service.

40. Any and all documents in the custody of the U.S. Department of State, created since January 20, 2009, relating in any way to donations to The Clinton Foundation including its projects or spin-off initiatives such as The Clinton Global Initiative.

41. Any and all documents relating in any way to then Secretary of Hillary Clinton's scheduling plans to attend any event of, hosted by or organized by the Clinton Foundation.

42. Any and all documents written by or addressed to Cheryl Mills relating in any way to any fees paid to, or contemplated to be paid, to Bill Clinton, the husband of Secretary of State Hillary Clinton, as a payment, honorarium or fee for any speech, appearance or participation in any event by Bill Clinton, concerning documents created after January 20, 2009, but before February 1, 2013.

43. Any and all documents relating to any waiver of conflict of interest rules by the U.S. State Department concerning any activity by Bill Clinton, concerning documents created after January 20, 2009, but before February 1, 2013.

44. Any and all documents created after January 20, 2009, but before February 1, 2013, relating in any way to requests or suggestions for then U.S. Secretary of State Hillary Clinton to oppose the foreign policy or interests of Israel.

45. Any and all documents created after January 20, 2009, but before February 1, 2013, relating in any way to requests or suggestions for then U.S. Secretary of State Hillary Clinton to seek to relax, reduce, or minimize sanctions on Iran.

46. Any and all documents created after January 20, 2009, but before February 1, 2013, relating in any way to requests or suggestions for then U.S. Secretary of State Hillary Clinton to seek to relax, reduce, or minimize opposition to Iran's nuclear weapons development programs.

47. Any and all documents created since January 20, 2009, relating in any way to any opposition of the U.S. Government to any contemplated action by Israel against Iran's nuclear weapons development program(s).

48. Any and all documents created since January 20, 2009, relating in any way to donations or suggested donations or contemplated donations to any organization opposing any politician or political party seeking election to office or re-election in Israeli government.

49. Any and all document created since January 20, 2009, relating in any way to donations or suggested donations or contemplated donations to any politician or political party seeking election to office or re-election in Israeli government.

State Department:  FOIA Request

50. Any and all documents relating in any way to the re-election campaign of Israeli Prime Minister Benjamin Netanyahu or Netanyahu's political party Likud during 2015.

Freedom Watch notes that President Barack Obama has ordered the Executive Branch in his January 21, 2009, Memorandum concerning the Freedom of Information Act, at 74 Fed. Reg. 4683, that:

> "All agencies should adopt a presumption in favor of disclosure, in order to renew their commitment to the principles embodied in FOIA.... The presumption of disclosure should be applied to all decisions involving FOIA."  And furthermore "The Freedom of Information Act should be administered with a clear presumption:  In the case of doubt, openness prevails."

If any responsive record or portion thereof is claimed to be exempt from production under FOIA, sufficient identifying information (with respect to each allegedly exempt record or portion thereof) must be provided to allow the assessment of the propriety of the claimed exemption. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974). Additionally, pursuant to law, any reasonably segregable portion of a responsive record must be provided after redaction of any allegedly exempt material. 5 U.S.C. §552(b).

Freedom Watch requests a waiver of all fees for this request under 5. U.S.C. § 552(a)(4)(A)(iii) and 22 C.F.R. §171.15(b) or (c).  Freedom Watch has consistently been determined for FOIA purposes to be operating in the interest disseminating this type of information about government activities to journalists and the public.  Freedom Watch is engaged in the active dissemination of public information as is evident by our ongoing public interest legal work.  Freedom Watch writes a weekly column and releases information to the public through regular press releases and its website. Disclosure of the requested information to Freedom Watch is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not in any commercial interest. Freedom Watch's website, www.freedomwatchusa.org serves to disseminate information, and is seen by millions of people annually. Officials of Freedom Watch frequently appear on radio and television to disseminate the information to the public.

You must have the documents delivered to the address below within 20 days as is required by law.

Sincerely,

Larry Klayman, Esq.
Chairman and General Counsel
2020 Pennsylvania Ave, N.W., Suite 345
Washington, D.C. 20006
leklayman@gmail.com