**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FREEDOM WATCH, INC.,

          Plaintiff,

    v.

U.S. DEPARTMENT OF STATE,

          Defendant.

Case No.  15-cv-1264
Judge Richard J. Leon

## DEFENDANT'S MOTION TO DISMISS

Defendant, the Department of State, by and through its undersigned counsel, hereby moves to dismiss Freedom Watch's Complaint (Dkt. No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6).  Accompanying this motion is a memorandum of points and authorities in support of the motion.  Defendant respectfully requests that the Court grant the motion for the reasons described in the memorandum.

Dated:  October 19, 2015

Respectfully submitted,

BENJAMIN MIZER
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

/s/ *John K. Theis*
JOHN K. THEIS (IL Bar No. 6287528)
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, NW Rm. 6108
Washington, DC 20001
Telephone:  (202) 305-7632
Fax:  (202) 616-8460
Email:  John.K.Theis@usdoj.gov

*Counsel for Defendant*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FREEDOM WATCH, INC., | |
| Plaintiff, | |
| v. | Case No.  15-cv-1264 |
| | Judge Richard J. Leon |
| U.S. DEPARTMENT OF STATE, | |
| Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>DEFENDANT'S MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ..................................................................... 1

STANDARD OF REVIEW .................................................................................................... 7

ARGUMENT: Plaintiff's 50-Part Request is Impermissibly Broad Under FOIA ......................... 7

CONCLUSION ................................................................................................................. 13

## TABLE OF AUTHORITIES

### Cases

*Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Commerce*,
    907 F.2d 203 (D.C. Cir. 1990) .................................................................................. 9, 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................. 7

*Assassination Archives & Research Ctr., Inc. v. CIA*,
    720 F. Supp. 217 (D.D.C. 1989) .......................................................................... 8, 9

*Atherton v. Dist. of Columbia Office of the Mayor*,
    567 F.3d 672 (D.C. Cir. 2009) ............................................................................. 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................. 7

*Borden v. FBI*,
    27 F.3d 554 (1st Cir. 1994) .................................................................................. 8

\* *Dale v. IRS*,
    238 F. Supp. 2d 99 (D.D.C. 2002) .......................................................... *passim*

*Fonda v. CIA*,
    434 F. Supp. 498 (D.D.C. 1977) .......................................................................... 11

\* *Freedom Watch, Inc. v. CIA*,
    895 F. Supp. 2d 221 (D.D.C. 2012) ........................................................ *passim*

\* *Freedom Watch v. State*,
    925 F. Supp. 2d 55 (D.D.C. 2013) .......................................................... *passim*

*Hidalgo v. FBI*,
    344 F.3d 1256 (D.C. Cir. 2003) ........................................................................... 7

*Int'l Counsel Bureau v. DOD*,
    723 F. Supp. 2d 54 (D.D.C. 2010) ...................................................................... 9

*Judicial Watch, Inc., v. Export-Import Bank*,
    108 F. Supp. 2d 19 (D.D.C. 2000) ...................................................................... 10

*Marks v. U.S. Dep't of Justice*,
    578 F.2d 261 (9th Cir. 1978) ............................................................................... 9

*Massachusetts v. DHHS*,
    727 F. Supp. 35 (D. Mass. 1989) ................................................................................. 11

*Moore v. FBI*,
    883 F. Supp. 2d 155 (D.D.C. 2012) ............................................................................ 10

*Porter v. CIA*,
    778 F. Supp. 2d 60 (D.C. Cir. 2011) ............................................................................ 7

*Sack v. CIA*,
    53 F. Supp. 3d 154 (D.D.C. 2014) ........................................................................ 9, 10

*Truitt v. Dep't of State*,
    897 F.2d 540 (D.C. Cir. 1990) ..................................................................................... 8

*Vest v. Dep't of Air Force*,
    793 F. Supp. 2d 103 (D.D.C. 2011) ............................................................................ 8

*Wilbur v. CIA*,
    355 F.3d 675 (D.C. Cir. 2004) ..................................................................................... 8

## Statutes

5 U.S.C. § 552(a)(3)(A) .................................................................................................... 8

5 U.S.C. § 552(a)(3)(A)(i) ............................................................................................... 8

**INTRODUCTION**

Under the Freedom of Information Act ("FOIA"), a request for information to an agency must "reasonably describe[]" the records sought.  Requests that lack sufficient particularity or are so broad as to impose an unreasonable burden upon the agency are not valid requests, and an agency need not honor an invalid request.  In this case, Freedom Watch sent the Department of State a sprawling 50-part request on a vast array of unrelated topics.  On its face, the sweeping request lacks sufficient specificity and would require an unreasonably burdensome search. Freedom Watch's failure to reasonably describe the records it seeks mandates dismissal of Freedom Watch's claim.

**FACTUAL AND PROCEDURAL BACKGROUND**

According to the Complaint, on March 27, 2015, Freedom Watch sent State a 50-part request for information.  Compl. at ¶ 5 (Dkt. 1).  This request sought documents concerning a broad range of topics, including the 2012 terrorist attacks on U.S. facilities in Benghazi, Libya, administrative matters at the Department of State, former Secretary of State Hillary Clinton's emails and email practices, the Clinton Foundation and President Bill Clinton, emails with former Internal Revenue Service official Lois Lerner, political and foreign policy issues regarding Israel, and Iran's nuclear weapons program.  *See* Compl. ¶¶ 5(1)-(50).

Specifically, the first request sought "[a]ny and all documents . . . concerning, regarding, or relating to terrorist attacks on the U.S. Consulate in Benghazi, Libya, on or about September 11, 2012."  Dkt. 1 ¶ 5(1).  Twenty-eight of the ensuing requests sought categories of documents related to the terrorist attacks in Benghazi.  *See* Dkt. 1 ¶ 5(2) (concerning "proposed or recommended explanations to the public of" the attacks); *id.* ¶ 5(3) (concerning "talking points" regarding the attacks); *id.* ¶ 5(4) (concerning "any decision for Susan Ambassador Rice [sic] to

1

appear on news media television shows" regarding the attacks); *id.* ¶ 5(5) (concerning "any decision by Hillary Clinton not to appear on news media television shows" regarding the attacks); *id.* ¶ 5(6) (concerning "any discussion or analysis of terrorist or violent attacks against the U.S. Consulate in Benghazi" during 2012 before the attacks); *id.* ¶ 5(7) (concerning "the location of President Barack Obama during the night of September 11, 2012"); *id.* ¶ 5(8) (concerning the "involvement" of President Obama in the U.S. Government response to the attacks); *id.* ¶ 5(9) ("communications . . . between then Secretary of State Hillary Clinton and then Secretary of Defense Leon Panetta" regarding the attacks); *id.* ¶ 5(10) (concerning the location of Secretary Clinton during the attacks); *id.* ¶ 5(11) (concerning "the involvement" of Secretary Clinton in the U.S. Government response to the attacks); *id.* ¶ 5(12) (concerning "orders" issued by Secretary Clinton in response to the attacks); *id.* ¶ 5(13) (concerning "recommendations, proposals, plans of action, or requests for action" from Secretary Clinton regarding the response to the attacks); *id.* ¶ 5(14) (concerning communications between Secretary Clinton and "any official of the government of Libya" regarding the attacks); *id.* ¶ 5(15) (concerning communications between Secretary Clinton and "any official of the government of Italy relating to the use of NATO assets in Italy in response to" the attacks); *id.* ¶ 5(16) (identical to ¶ 15); *id.* ¶ 5(17) (concerning "the distance of any U.S. aircraft carrier battle group located in the Mediterranean Sea or Persian Gulf to Benghazi" on the night of the attacks); *id.* ¶5(18) (concerning "any discussion or analysis of the closing of the Embassy of the United Kingdom in Libya during 2012"); *id.* ¶ 5(19) (concerning whether State "should close the U.S. Consulate in Benghazi" after the closure of the U.K. Embassy in Libya); *id.* ¶ 5(20) (concerning "increasing security for U.S. Government personnel in Libya" after the closure of the U.K. Embassy in Libya); *id.* ¶ 5(21) (concerning plans for Secretary Clinton to visit Benghazi in the

Fall of 2012); *id.* ¶ 5(22) (concerning proposals to publicize "State activities in Benghazi" in the Fall of 2012 "as a foreign policy success or achievement of the Obama administration"); *id.* ¶ 5(23) (apparently identical to ¶ 22); *id.* ¶ 5(24) (concerning "the feasibility of sending AFRICOM *Commander in Extremis* (CIF) forces, teams, or personnel to respond" to the attacks); *id.* ¶ 5(25) (concerning "the estimated time it would take for [CIF] forces, teams, or personnel to reach Benghazi" to respond to the attacks); *id.* ¶ 5(26) (concerning "the presence or stationing of [CIF] forces, teams, or personnel in Sigonella Air Base in Italy" on the day of the attacks); *id.* ¶ 5(27) (concerning the "availability of [CIF] forces, teams, or personnel on standby to respond to possible crises in Africa, the Middle East, or the Mediterranean Sea region" on the day of the attacks); *id.* ¶ 5(37) (concerning "the means or methods by which any official or officer of [State] communicated" with Secretary Clinton regarding the attacks); *id.* ¶ 5(38) (concerning emails "to or from Secretary Hillary Clinton or Cheryl Mills at any non-governmental email address or account relating to the editing or modification of talking points describing" the attacks).[1]

Various requests sought information regarding the records and email practices of former Secretary Clinton. *See id.* ¶ 5(28) ("A copy of any form 'OF 109' signed by Secretary of State Hillary Clinton as an employee of the U.S. Department of State upon her resignation from the Department, which for informational guidance was probably signed in or around January, February, or March 2013."); *id*. ¶ 5(29) ("One copy of each of the approximately 30,490 emails which Hillary Clinton maintained on a private computer file server / email system during her tenure as Secretary of State that she turned over to the U.S. Department of State in or about

---

[1] Many of these requests state that the "documents" to be searched "includ[e] emails that had been stored and/or processed on a computer file server maintained by then Secretary of State Hillary Clinton."  *Id.* at ¶ 5(1)-(27).  The requests do not limit the records sought to those found within those emails.

February or March 2013."); *id.* ¶ 5(32) ("Any and all communications with any person in the
White House or Executive Office of the President created after January 20, 2009, but before
February 1, 2013, discussing the use of email by former Secretary of State Hillary Clinton,
including Clinton's use of any particular email address or account."); *id.* ¶ 5(33) ("Any and all
emails – produced in redacted form to withhold classified material – sent to or sent from
Secretary of State created after January 20, 2009, but before February 1, 2013, relating to or
containing any classified information.").

Another group of requests sought information related to general email practices at the
Department of State.  *See id.* ¶ 5(30) ("Any and all documents created after January 20, 2009,
that identify or discuss officials, officers, or employees of the State Department using email
addresses or accounts other than a 'state.gov' email addresses assigned to them for the conduct
of official U.S. Department of State business."); *id.* ¶ 5(31) ("Any and all documents created
after January 20, 2009, discussing incidents or problems of non-compliance by employees or
officials of the U.S. Department of State with Departmental procedures, regulations, or
requirements as to which email addresses or accounts they should use for the conduct of official
U.S. Department of State business."); *id.* ¶ 5(36) ("Any and all documents describing the policies
and/or procedures in place to ensure that emails for the conduct of official U.S. Department of
State business from private email addresses other than 'state.gov' email addresses were searched
for responsiveness to FOIA requests.").

Other requests sought information about the Clinton Foundation and President Bill
Clinton.  *Id.* ¶ 5(34) ("Any and all documents relating to any request, proposal, or suggestion for
any action, change of position, waiver, policy, or statement from the U.S. Department of State
from any person, organization, country, or business identified in such document as a donor to the

4

Clinton Foundation, concerning documents created after January 20, 2009, but before February 1, 2013."); *id.* ¶ 5(35) ("Any and all documents relating to any request, proposal, or suggestion for any action, change of position, waiver, policy, or statement from the U.S. Department of State from any person, organization, country, or business identified in such document as paying any speaking fee to Bill Clinton, concerning documents created after January 20, 2009, but before February 1, 2013."); *id.* ¶ 5(40) ("Any and all documents in the custody of the U.S. Department of State, created since January 20, 2009, relating in any way to donations to The Clinton Foundation including its projects or spin-off initiatives such as The Clinton Global Initiative."); *id.* ¶ 5(41) ("Any and all documents relating in any way to then Secretary of [State] Hillary Clinton's scheduling plans to attend any event of, hosted by or organized by the Clinton Foundation."); *id.* ¶ 5(42) ("Any and all documents written by or addressed to Cheryl Mills relating in any way to any fees paid to, or contemplated to be paid, to Bill Clinton, the husband of Secretary of State Hillary Clinton, as a payment, honorarium or fee for any speech, appearance or participation in any event by Bill Clinton, concerning documents created after January 20, 2009, but before February 1, 2013."); *id.* ¶ 5(43) ("Any and all documents relating to any waiver of conflict of interest rules by the U.S. State Department concerning any activity by Bill Clinton, concerning documents created after January 20, 2009, but before February 1, 2013.").

Several requests sought information about Israel and Israeli politics. *Id.* ¶ 5(44) ("Any and all documents created after January 20, 2009, but before February 1, 2013, relating in any way to requests or suggestions for then U.S. Secretary of State Hillary Clinton to oppose the foreign policy or interests of Israel."); *id.* ¶ 5(48) ("Any and all documents created since January 20, 2009, relating in any way to donations or suggested donations or contemplated donations to

any organization opposing any politician or political party seeking election to office or re-election in Israeli government."); *id.* ¶ 5(49) ("Any and all document created since January 20, 2009, relating in any way to donations or suggested donations or contemplated donations to any politician or political party seeking election to office or re-election in Israeli government."); *id.* ¶ 5(50) ("Any and all documents relating in any way to the re-election campaign of Israeli Prime Minister Benjamin Netanyahu or Netanyahu's political party Likud during 2015.").

Another set of requests related to sanctions against Iran and the Iranian nuclear program. *Id.* ¶ 5(45) ("Any and all documents created after January 20, 2009, but before February 1, 2013, relating in any way to requests or suggestions for then U.S. Secretary of State Hillary Clinton to seek to relax, reduce, or minimize sanctions on Iran."); *id.* ¶ 5(46) ("Any and all documents created after January 20, 2009, but before February 1, 2013, relating in any way to requests or suggestions for then U.S. Secretary of State Hillary Clinton to seek to relax, reduce, or minimize opposition to Iran's nuclear weapons development programs."); *id.* ¶ 5(47) ("Any and all documents created since January 20, 2009, relating in any way to any opposition of the U.S. Government to any contemplated action by Israel against Iran's nuclear weapons development program(s).").

A final request sought communications to former Internal Revenue Service official Lois Lerner.  *Id.* ¶ 5(39) ("Any and all email communications in the custody of the U.S. Department of State created after January 20, 2009, but before February 1, 2013, between Hillary Clinton, Cheryl Mills, and/or Huma Abedin (whether using a governmental email address or account or a non-governmental email address or account) and any non-governmental email address or account used by Lois Lerner, an official at the Internal Revenue Service").

For each of the fifty requests, Freedom Watch sought "all correspondence, memoranda,

documents, reports, records, statements, audits, lists of names, applications, diskettes, letters, expense logs and receipts, calendar or diary logs, facsimile logs, telephone records call sheets, tape recordings, video/movie recordings, notes, examinations, opinions, folders, files, books, manuals, pamphlets, forms, drawings, charts, photographs, electronic mail, and other documents and things" that "refer or relate . . . in any way" to the various topics.  *Id.* ¶ 5.  On August 6, 2015, Freedom Watch filed its Complaint, seeking, among other things, to order Defendant to search for records responsive to the fifty-part request.  *Id.*, Prayer for Relief.

## STANDARD OF REVIEW

A FOIA action may be dismissed for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), when a plaintiff has failed to exhaust its administrative remedies.  *Hidalgo v. FBI*, 344 F.3d 1256, 1258, 1260 (D.C. Cir. 2003).  In reviewing a motion to dismiss under Rule 12(b)(6), the Court will ordinarily "accept as true all of the factual allegations contained in the complaint," *Atherton v. Dist. of Columbia Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (citation omitted), and construe it in plaintiff's favor.  *Porter v. CIA*, 778 F. Supp. 2d 60, 65 (D.C. Cir. 2011).  However, "the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## ARGUMENT

### Plaintiff's 50-Part Request is Impermissibly Broad Under FOIA

Freedom Watch's failure to submit a proper FOIA request constitutes a failure to exhaust administrative remedies and mandates dismissal of the Complaint.  Exhaustion of administrative

remedies "is a mandatory prerequisite to a lawsuit under FOIA." *Wilbur v. CIA*, 355 F.3d 675, 676 (D.C. Cir. 2004) (citation omitted).  The failure to submit a proper FOIA request constitutes a failure to exhaust administrative remedies.  *Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002); *Vest v. Dep't of Air Force*, 793 F. Supp. 2d 103, 114-115 (D.D.C. 2011).   Accordingly, an agency's "obligation under FOIA begins only upon receipt of a valid request." *Dale*, 238 F. Supp. 2d at 103.

FOIA sets forth specific requirements for a valid request, including the requirement that a "request for records . . . *reasonably describe[]* such records."  5 U.S.C. § 552(a)(3)(A) (emphasis added).  "[R]ecords are reasonably described 'if a professional employee of the agency familiar with the subject matter can locate the records with a 'reasonable amount of effort.'"  *Freedom Watch, Inc. v. CIA*, 895 F. Supp. 2d 221, 228 (D.D.C. 2012) (citation omitted); *see also Truitt v. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990).[2]  "[I]t is the requestor's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome, and to enable the searching agency to determine precisely what records are being requested." *Assassination Archives & Research Ctr., Inc. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989), *aff'd in pertinent part*, No. 89-5414, 1990 WL 123924 (D.C. Cir. Aug. 13, 1990) (per

---

[2] The professional-employee test is an objective test, and courts are equipped to make this determination by resort to the FOIA request alone.  *See Dale*, 238 F. Supp. 2d at 105 (noting that document request was deficient "on its face"); *Freedom Watch, Inc. v. CIA*, 895 F. Supp. 2d at 228 ("Freedom Watch's complaint demonstrates on its face that its FOIA requests" are improper; *Freedom Watch v. State*, 925 F. Supp. 2d 55, 61 (D.D.C. 2013).  In other words, agencies need not introduce evidence showing that, based on a particular document request, *their* professionals are incapable of locating the requested records with a reasonable amount of effort. *See Borden v. FBI*, 27 F.3d 554, *1 (1st Cir. 1994) (unpublished) ("[T]he request which plaintiff allegedly presented . . . does not reasonably describe the records sought. . . . Since the complaint shows on its face that the plaintiff did not present a proper request, we need not consider defendant's remaining arguments." (citations omitted)).  Nothing in the statute would suggest that the validity of a document request turns on the person to whom that request is assigned. *See* 5 U.S.C. § 552(a)(3)(A)(i).

curiam) (citation omitted).  By contrast, "[b]road, sweeping requests lacking specificity are not sufficient."  *Sack v. CIA*, 53 F. Supp. 3d 154, 163 (D.D.C. 2014) (citing *Dale*, 238 F. Supp. 2d at 104); *see also Marks v. U.S. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978) (courts have "held that broad, sweeping requests lacking specificity are not permissible" (collecting cases)).

Overbroad and unreasonably burdensome requests are invalid because "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Assassination Archives*, 720 F. Supp. at 219.  Nor was FOIA intended to allow requesters to conduct a "fishing expedition" through agency files.  *Dale*, 238 F. Supp. 2d at 104-05.  This limitation protects the ability of federal agencies to prioritize their resources notwithstanding any obligation to provide access to records under FOIA.  *See, e.g.*, *Int'l Counsel Bureau v. DOD*, 723 F. Supp. 2d 54, 59-60 (D.D.C. 2010).  Ultimately, "[a]n agency need not honor a request that requires 'an unreasonably burdensome search.'" *Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) (citation omitted); *Freedom Watch*, 895 F. Supp. 2d at 228; *see also Freedom Watch v. State*, 925 F. Supp. 2d at 62-63 (dismissing complaint where overbroad requests were "infirm from the beginning" regardless of defendants' response to the requests).

On the distinction between a valid and unreasonable FOIA request, *Freedom Watch v. CIA* is particularly instructive.  895 F. Supp. 2d at 228.  There, a similarly broad-ranging request from the plaintiff in this case was rejected as improper.  Freedom Watch filed a 49-part request seeking a variety of records from State concerning Iran, Israel, Iraq, North Korea, Russia, Azerbaijan, and other nations.  *Id.*  The Court concluded that "Freedom Watch's complaint demonstrates on its face that its FOIA requests are virtually incomprehensible and are 'so broad as to impose an unreasonable burden upon the agency.'"  *Id.* at 228-29 (quoting *Am. Fed'n of*

9

*Gov't Emps., Local 2782*, 907 F.2d at 209).  The Court reached this conclusion because

responding to the 49-part request "would require the agency to locate, review, redact, and

arrange for inspection a vast quantity of material."  *Id*. at 229 (citation omitted).  As an example,

the Court noted that Freedom Watch's request for "any and all information 'leaked' or otherwise

provided about a draft version of the 2010 National Intelligence Estimate" was "extraordinarily

broad standing alone," and the fact that "it is only one of 49 similarly vague inquiries confirms

the unreasonable and burdensome nature of Freedom Watch's FOIA requests."  *Id*.; *see also*

*Freedom Watch, Inc. v. State*, 925 F. Supp. 2d 55, 61-63 (D.D.C. 2013) (rejecting Freedom

Watch's 63-part request seeking "all" records that "refer or relate" to a variety of topics, and

finding that the request "failed to identify the documents sought with any modicum of specificity

and were thus fatally overbroad and burdensome").

        Courts have similarly rejected requests seeking vast amounts of material described in

broad terms.  *See, e.g.*, *Sack v. CIA*, 53 F. Supp. 3d 154, 160 (D.D.C. 2014) (concluding that

agency was not required to conduct a search for a request for all records that "pertain[ ] in whole

or in part (all years, all classifications)" a list of closed Inspector General reports because it

lacked clarity and was overbroad); *Moore v. FBI*, 883 F. Supp. 2d 155, 163 (D.D.C. 2012)

(finding that a request for "information to make easier to locate consciousness-altering

technology, or behavioral modification techniques, information regarding the program" was "not

reasonably descriptive to trigger the CIA's disclosure obligations"); *Dale*, 238 F. Supp. 2d at 104

(holding that a request for "any and all documents, including but not limited to files, that refer or

relate in any way to" the plaintiff "amounted to an all-encompassing fishing expedition of files at

IRS offices across the country," warranting dismissal); *Judicial Watch, Inc.*, *v. Export-Import*

*Bank*, 108 F. Supp. 2d 19, 26-28 (D.D.C. 2000) (concluding that FOIA request for all records

pertaining to two individuals and the "companies, entities and/or persons related or doing or conducting business with the People's Republic of China" did not "reasonably describe the records sought," was "unreasonably broad and impose[d] an unreasonable burden" on the agency); *see also Massachusetts v. DHHS*, 727 F. Supp. 35, 36 n.2 (D. Mass. 1989) (noting that a "request for all documents 'relating to' a subject . . . unfairly places the onus of non-production on the recipient of the request and not where it belongs—upon the person who drafted such a sloppy request").

In this case, Freedom Watch's fifty-part request fails on its face to reasonably describe the records sought and would require Defendant to conduct an unreasonably burdensome search. Many of the individual subparts lack sufficient specificity and would impose an unreasonable burden on Defendant. For example, in the first subpart of the request, Freedom Watch sought "[a]ny and all documents . . . concerning, regarding, or relating to" the 2012 attacks in Benghazi. Compl. ¶ 5(1).[3] The request contained no limitation of custodians, offices within the State Department, or temporal scope, and did not provide any criterion by which to determine what records "concern," "regard," or "relate to" the attacks. *See Fonda v. CIA*, 434 F. Supp. 498, 501 (D.D.C. 1977) (requester who sought "all documents which ... 'concern her' but do not mention her name" made overbroad request by "offer[ing] no criterion by which defendants can determine which documents 'concern her'"). The request could plausibly be read to include any document of any individual at the Department of State regarding any aspect of the attacks, including, for example, the immediate response to the attacks, public communications about the

---

[3] Other FOIA requesters have sought records related to the 2012 Benghazi attacks, such as talking points and correspondence with Congress. Those requests, however, have all been subject matter and/or time limited, or limited to certain offices with State. They stand in stark contrast to Freedom Watch's request here, which impossibly seeks "any and all documents . . . concerning, regarding, or relating to" the attacks.

attacks, the various investigations into the attacks, or measures related to diplomatic security taken in the wake of the attacks.  Indeed, the fact that twenty-eight of the remaining fifty subparts also seek documents that "relate to" individual aspects of the attacks demonstrates the massive scope of the first subpart.

That subpart constituted only one part of fifty, and demonstrates the unreasonable nature of Freedom Watch's request.  *See Freedom Watch v. State*, 925 F. Supp. 2d at 62; *Freedom Watch v. CIA*, 895 F. Supp. 2d at 229.  The remaining subparts would task Defendant with seeking information related to Israel, Iran, the IRS, the Clinton Foundation, Secretary Clinton's email practices, and President Bill Clinton.  Each subpart is prefaced with a request that Defendant provide materials "that refer or relate to the following in any way."  Compl. ¶ 5.  The request could be read to seek any information tangentially related to each of the topics. Moreover, even subparts that appear to be directed at a limited set of documents–*e.g.*, the form "OF 109" signed by Secretary Clinton, *id.* ¶ 5(28)—would require a search not only for the specific documents, but for any document that refers or relates to those documents in any conceivable manner.

Taken as a whole, Freedom Watch's request would require Defendant to locate a vast quantity of material on an array of unrelated topics.  Such a request would impose an unreasonable burden on Defendant, and fails to constitute a valid request under FOIA.  *Freedom Watch, Inc. v. State*, 925 F. Supp. 2d 55, 61-63; *Freedom Watch v. CIA*, 895 F. Supp. 2d at 228-29.

*             *             *

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its Motion to Dismiss the Complaint.

Dated:  October 19, 2015                    Respectfully submitted,

                                            BENJAMIN MIZER
                                            Principal Deputy Assistant Attorney General

                                            ELIZABETH J. SHAPIRO
                                            Deputy Director, Federal Programs Branch

                                            /s/ *John K. Theis*
                                            JOHN K. THEIS (IL Bar No. 6287528)
                                            Trial Attorney
                                            Federal Programs Branch
                                            U.S. Department of Justice, Civil Division
                                            20 Massachusetts Avenue, NW Rm. 6108
                                            Washington, DC 20001
                                            Telephone:  (202) 305-7632
                                            Fax:  (202) 616-8460
                                            Email:  John.K.Theis@usdoj.gov

                                            *Counsel for Defendant*

13